UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-62074-CIV-MARRA/MATTHEWMAN

KEVIN BUCKLER and VERONICA
EKANEM,

Plaintiffs,

vs.

SCOTT J. ISRAEL, et al,

Defendants.
_____/

**OPINION AND ORDER**

This cause is before the Court upon Defendants' Motion to Dismiss, or in the Alternative, Motion to Sever Plaintiffs (D E4).  The Court has carefully considered the Motion and is otherwise fully advised in the premises.

I. Background

On September 24, 2013, Defendants Scott Israel, in his official capacity as Sheriff of Broward County ("Sheriff"), Gerald E. Wengert, Curtis Roberts, Geoff Brown, Nicholas Degiovanni, Papens Lamisere and Steve Santiago, individually and in their official capacities as deputy sheriffs for the Broward County Sheriff's Office (collectively, "Defendants") filed a Notice of Removal of Plaintiffs Kevin Buckler and Veronica Ekanem (collectively, "Plaintiffs") six-count Complaint. (Notice of Removal, DE 1; Compl., DE 1-2.)  The Complaint brings claims by Buckler for assault and battery against Wengert and Roberts (count one); for assault and battery by Ekanem against Degiovanni, Lamisere and Santiago (count two), a claim by Buckler pursuant to 42 U.S.C. § 1983 against Wengert, Roberts and Brown (count three), a claim by

Ekanem pursuant to 42 U.S.C. § 1983 against Degiovanni, Lamisere and Santiago (count four), a state tort claim by Buckler and Ekanem against the Sheriff (count five) and a claim by Buckler and Ekanem pursuant to 42 U.S.C. § 1983 against the Sheriff (count six).

According to the allegations of the Complaint, on or about March 26, 2010, Buckler was driving and stopped to purchase cigarettes at a gas station in Cooper City, Florida. (Compl. ¶ 15.) Wengert and Brown were present at the gas station. (Compl. ¶ 16.)  Wengert followed Buckler into the store and asked him several times, "Are you eye-fucking me?"  Buckler responded, "No sir. I am getting a pack of cigarettes." (Compl. ¶ 18.)  Buckler got in his car and drove away, but Wengert pulled him over less than a mile away from the gas station. (Compl. ¶¶ 20-21.) Wengert ordered Buckler out of the car, but Wengert then blocked the door with his body. (Compl. ¶¶ 23-24.)  Wengert proceeded to smash Buckler's face into the door frame of the car, jump on top of him and punch him in the face.  (Compl. ¶¶ 25-26.)

Brown falsely claimed that Buckler was playing very loud music when he pulled up to the gas station and that he had a "strange look." (Compl. ¶ 30.)  Wengert and Brown claimed it had been Wengert's intention upon leaving the gas station to stop Buckler's car immediately for playing excessively loud music. (Compl. ¶ 31.)  Roberts arrived on the scene while Wengert was beating up Buckler. (Compl. ¶ 34.)  Roberts falsely claimed that Buckler was resisting arrest and that he had to assist Wengert in handcuffing Buckler by repeatedly punching and kneeing Buckler in his torso area. (Compl. ¶ 35.)  Buckler sustained permanent physical injuries, as well as emotional and psychological injuries. (Compl. ¶ 44.)

Wengert, Roberts and Brown filed false police reports. (Compl. ¶ 45.)   Wengert caused a prosecution to be instituted against Buckler on several criminal charges. (Compl. ¶ 46.)

Wengert and Roberts made false reports and false claims that Buckler had violently resisted arrest and committed a battery on a police officer, despite the fact they suffered no injuries. (Compl. ¶¶ 47-48.)  Buckler was charged by information with battery on a law enforcement officer and resisting an officer with violence. (Compl. ¶ 49.)  Buckler went to trial and, on August 25, 2011, was acquitted of all charges. (Compl. ¶ 55.)

On or about April 10, 2011, Ekanem was falsely arrested and beaten by Degiovanni, Santiago and Lamisere. (Compl. ¶ 60.)  At approximately 11:30 p.m., on April 10, 2011, deputies were called to the residence of Paul Hendrix at 2950 NW 35 th Avenue, Lauderdale Lakes, Florida concerning a dispute at a party that was being held at the residence. (Compl. ¶ 61.) Ekanem, a guest at the party, had been playing dominoes with small children in the back of the residence. Upon hearing loud noises at the front of the residence, she walked over to see what was happening. (Compl. ¶ 62.)   When Ekanem came out of the house, she observed her friend Dervent Barrett in handcuffs. When Ekanem asked the deputies what was happening, she was told to ask Defendant Santiago. (Compl. ¶ 63.)  As Ekanem was speaking with Santiago, she was approached by three persons from the party. Santiago told Ekanem to walk away from them, which she did, going over to where the children were standing in the driveway. (Compl. ¶ 64.) Suddenly, Santiago and/or Degiovanni and/or Lamisere grabbed her, handcuffed her and told her she was being arrested for disorderly conduct. (Compl. ¶ 66.)

Ekanem responded that she had done nothing wrong and had only been playing with the small children at the party. In response, Santiago, and/or Degiovanni and/or Lamisere, without provocation or justification, slammed her face onto the concrete pavement. (Compl. ¶ 67.)  When Ekanem cried out that they were hurting her, Lamisere and/or Santiago, and/or Degiovanni put

3

his knee on the back of Ekanem's head and pressed her face down harder, grinding it into the concrete pavement. (Compl. ¶ 68.) They then lifted her up to her feet. Upon seeing the blood running down her face, they jumped back and dropped her back onto the ground. (Compl. ¶ 69.) They yelled at her to get up and get in the police vehicle, but due to her injuries and being handcuffed, Ekanem's attempts to comply with their order failed. They then dragged her on the ground by her skirt, pulling her bodily into the back of a police vehicle. (Compl. ¶ 70.) Ekanem suffered a head injury, dizziness, blurred vision, severe headaches, multiple cuts and abrasions to her forehead and left side of her face and eye. (Compl. ¶¶ 71, 76.)

Degiovanni charged Ekanem with disorderly conduct and resisting arrest with violence. (Compl. ¶ 75.) Santiago, Degiovanni, and Lamisere filed false police reports and/or made false statements, claiming Ekanem engaged in disorderly conduct and violently resisted arrest. (Compl. ¶ 78.) On January 31, 2012, a nolle prosequi was entered by the Broward County State Attorney's office as to all criminal charges against Ekanem. (Compl. ¶ 86.)

In his capacity as the Sheriff of Broward County, the Sheriff had a duty to train, supervise, control or otherwise ensure that Wengert, Roberts, Brown, Degiovanni, Lamisere and Santiago, and other deputy sheriffs, did not violate the constitutional rights of persons such as Buckler and Ekanem. (Compl. ¶ 93.) The Sheriff has been charged with the responsibility of adopting and implementing rules and regulations for the employees of the Broward County Sheriff's office. (Compl. ¶ 94.) The Sheriff abdicated his policymaking and oversight responsibilities, thereby allowing the incidents at issue here to occur. (Compl. ¶ 95.)

The Sheriff has maintained a long-standing, widespread history of failure to properly hire, train, supervise, or discipline his deputy sheriffs for, among other things, illegal use of force

and/or unlawful detention or arrest, even though he had notice of this unlawful conduct by his employees. (Compl. ¶ 98.)   The Sheriff has maintained a system of review of incidents of abuse of lawful authority, which has failed to identify the unlawful use of force or seizures by deputy sheriffs, or to subject deputy sheriffs who employed such acts to appropriate discipline, supervision, or retraining.  As such, it has become the de facto policy and custom of the Sheriff to tolerate such acts by his deputy sheriffs. (Compl. ¶ 100.)  There also existed a de facto policy by the Sheriff of covering up police misconduct by failing to properly investigate alleged misconduct, by conducting investigations that were intentionally deficient, by fabricating evidence to justify the misconduct or by covering up the misconduct by listing the problem investigations as "open," long after any actual investigation had ceased, thereby attempting to insulate the Broward County Sheriff's office, and its employees from scrutiny by the public. (Compl. ¶ 101.)

The Sheriff had notification that investigations of excessive force, abuse of lawful authority, and other complaints concerning the conduct of his deputy sheriffs had been destroyed or purged in order to cover-up the misconduct of his deputy sheriffs. (Compl. ¶ 103.)  The Sheriff has maintained incomplete records with respect to use of force, unlawful seizures, complaints or other misconduct by his deputy sheriffs, thereby undermining his ability to properly supervise, control or discipline said subordinates, and to prevent the constitutional violations such as those suffered by Buckler and Ekanem. (Compl. ¶ 104.)   It is the unwritten policy of the Sheriff not to investigate use of force by his deputy sheriffs if there are criminal charges brought against the person subjected to the use of force. This unwritten policy has existed since at least the tenure of Sheriff Nick Navarro who was in office from 1985-1993. (Compl. ¶¶ 92, 106.)

No investigation into the use of force by Wengert, Roberts, Santiago, Degiovanni or Lamisere has been done by the Sheriff. (Compl. ¶¶ 108-09.)  The Sheriff has been on notice of a pattern and/or practice of engaging in unlawful detention and seizures, false arrests and imprisonment, false prosecution and excessive use of force. (Compl. ¶ 110.)

Defendants seek dismissal of all claims against the deputy sheriff Defendants in their official capacities as redundant.  In addition, Defendants contend they have not been put on fair notice as to the claims against each Defendant because there are multiple claims in a single count alleged against multiple Defendants.  Defendants argue the negligence claim against the Sheriff should be dismissed because the Complaint fails to allege a duty owed by Sheriff to Plaintiffs which is not owed to the general public and, in any event, would be barred by sovereign immunity.  With respect to the negligent hiring and negligent retention claims, Defendants claim the Complaint fails to allege facts that the Sheriff knew or should have known that the deputy sheriff Defendants were dangerous.  Defendants also claim that the Complaint does not properly allege a custom or policy by the Sheriff.  Finally, Defendants seek severance of all counts on behalf of Buckler from all counts on behalf of Ekanem.

II. Legal Standard

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to

relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 1950.  When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

### III. Discussion

The Court begins its discussion by rejecting Defendants' argument that the official capacity suits are redundant against the individual deputy sheriff Defendants.  See Patterson v. Walden, No. 13–0109–WS–B, 2013 WL 3153761, at * 3 (S.D. Ala. June 18, 2013) (official-capacity claims nominally raised against individual government officials are "routinely litigated to conclusion on the merits as the functional equivalent of a direct suit against the municipality itself."); see also Ortega v. Schramm, 922 F.2d 684 (11th Cir. 1991) (allowing suit in official capacity against both the sheriff and deputy sheriff); cf. Jordan v. Mosley, 487 F.3d 1350,1354 n.3 (11th Cir. 2007) (declining to decide whether a deputy sheriff sued in official capacity is entitled to the same Eleventh Amendment immunity as a sheriff). Thus, the Court finds this is not a basis to dismiss the official capacity suits against the individual sheriff deputy

Defendants.

Next, the Court will address Defendants' argument that the Complaint is a shotgun pleading which does not clearly set forth which causes of action are being supported by which factual allegations and under which right and against which Defendant. "Shotgun" pleadings are pleadings in which it is "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." Anderson v. Dist. Bd. of Tr. of Cent. Florida Cmty. Coll., 77 F.3d 364, 366 (11th Cir.1996). The Court does not find this to be a shotgun pleading requiring dismissal. However, the Court agrees with some of Defendants' criticisms and will give Plaintiffs leave to amend to clarify the pleadings.

For example, the Court agrees that paragraphs 58 and 59 (which pertain to Buckler) and paragraphs 89 and 90 (which pertain to Ekanem) should not be incorporated into counts one and two, which set forth a cause for assault and battery. Likewise, paragraphs 58 and 89 should not be incorporated into counts three and four which are constitutional claims. The Court also agrees with Defendants that, with respect to damages, paragraph 116 is inconsistent with paragraphs 114 and 115. Plaintiffs should remedy this inconsistency and identify for which constitutional claims they are seeking damages. Lastly, while count six is a Monell claim against the Sheriff, paragraph 157 alleges that the illegal acts were the "acts, omissions, policies or customs of said Defendant*s*." (emphasis added.) The Court agrees with Defendants that the Monell claim appears to be brought against the Sheriff only, and Plaintiff should amend this paragraph to reflect that count six is brought against the Sheriff alone.

With respect to the due process claims, Defendants are correct that because Plaintiffs were prosecuted in state court and the claims in the suit are against non-federal officials and a

non-federal government entity, it is improper to invoke the due process clause of the Fifth Amendment. See Porter v. White, 483 F.3d 1294, 1297 n. 1 (11th Cir. 2007).  Plaintiffs must instead bring their due process claims pursuant to the Fourteenth Amendment.  Defendants also raise a concern that Plaintiffs improperly seek to bring a malicious prosecution action pursuant to the Sixth Amendment. (Mot. at 5.)  While Plaintiffs do not address this directly, they appear to concede this point by stating that a malicious prosecution action is a violation of the Fourth Amendment.  (Resp. at 13.)  For this reason, to the extent the Complaint attempts to bring a malicious prosecution action pursuant to the Sixth Amendment, it is dismissed.  See Wood v. Kesler, 323 F.3d 872, 881 (11th Cir. 2003) (malicious prosecution as a constitutional tort is a violation of the Fourth Amendment).  Nor has Plaintiff provided a legal basis to bring a section 1983 claim pursuant to the Sixth Amendment for a "right to a fair trial" and any claim on this basis is dismissed. (Resp. at 14.)   Hence, the section 1983 claims pursuant to the Fifth and Sixth Amendments are dismissed.

Next, the Sheriff has moved to dismiss Plaintiffs' claim for negligent hiring, supervision and retention asserting that the Complaint fails to allege any duty owed by the Sheriff to Plaintiffs.  Defendants also assert there are no factual allegations to support the contention that the Sheriff knew or should have known that the deputy sheriff Defendants were dangerous prior to being hired or prior to the incidents alleged in the Complaint.   In addition, the Sheriff contends Plaintiff's claim against him is barred by sovereign immunity.

To state a claim for negligent hiring, supervision or retention, a plaintiff must establish that the employer owed a legal duty to the plaintiff to exercise reasonable care in hiring and retaining safe and competent employees. Magill v. Bartlette Towing, Inc., 35 So.3d 1017, 1020

(Fla. Dist. Ct. App. 2010). For an employer to owe a plaintiff a duty, the plaintiff must be in the zone of risk that was reasonably foreseeable to the employer. Id. Accordingly, to state a claim, the plaintiff must "allege facts that would establish some relationship or nexus between the plaintiff and the tortfeasor's employment from which a legal duty would flow from the defendant-employer to that particular plaintiff." Id. at 1021.

Here, the Complaint alleges that the Sheriff owed Plaintiffs a duty and Plaintiffs were within the "zone of risk" created by the Sheriff's negligent hiring, retention and supervision policies. (Compl. ¶¶ 138, 141.)  The Court agrees with Defendants that, when bringing this claim against law enforcement, it is necessary for Plaintiffs to allege a duty owed to them, and not the general public. (Mot. at 7.)  However, as the person responsible for hiring, retaining and supervising deputy sheriffs, the Sheriff had a duty to prevent an employee from assaulting a person placed under arrest. See Vaden v. Campbell, No. 4:09cv12–RH/WCS, 2009 WL 1919474, at * 3 (N.D. Fla. July 2, 2009); see also Farabee v. Rider, 995 F. Supp. 1398, 1403-04 (M.D. Fla. 1998) (the sheriff owes duty to an arrestee taken into custody by deputies to lessen risk of harm created by the sheriff's failure to properly train or supervise deputies);  cf. Walker v. Palecek, No. 3:05-CV-760-J, 2006 WL 335803, at * 3 (under Florida law, sheriffs are vicariously liable for the negligent acts of their deputies).  Thus, given that Plaintiffs allege they were placed under arrest and then assaulted, the Court rejects Defendants' argument that the Complaint does not properly allege a duty.

Next, the Complaint alleges it was "foreseeable" that the deputy sheriff Defendants would use their positions as law enforcement officers to injure third parties.  (Id. at ¶¶ 140.) With respect to retention and supervision, the Complaint alleges that the Sheriff failed to

discipline or retrain deputy sheriffs that used illegal force. (Id. at ¶¶ 99-101, 103-107.)[1]  As a result of the Sheriff's actions with respect to hiring, retention and supervision of the deputy sheriff Defendants, Plaintiffs suffered injuries. (Id. at ¶ 142.)  Thus, the Complaint states a claim for negligent retention and supervision.  See Storm v. Town of Ponce Inlet, 866 So.2d 713, 717 (Fla. Dist. Ct. App. 2004) ("[N]egligent retention or supervision of police officers or deputies is a viable tort which could be brought against the state or a municipality in a proper case.").

Because the Complaint has properly alleged a duty to Plaintiffs, the Court must now consider whether sovereign immunity applies.  See Storm, 866 So. 2d at 717 (explaining the two step analysis for a tort claim against a government body).  The Eleventh Circuit explained Florida sovereign immunity law in Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla., 402 F.3d 1092, 1117-18 (11th Cir. 2005):

> [U]nder Florida law, "a governmental agency is immune from tort liability based upon actions that involve its 'discretionary' functions." Lewis v. City of St. Petersburg, 260 F.3d 1260, 1266 (11th Cir. 2001) citing Dep't of Health & Rehabilitative Servs. v. Yamuni, 529 So. 2d 258, 260 (Fla.1988). As the Supreme Court of Florida has explained recently, "if a duty of care is owed, it must then be determined whether sovereign immunity bars an action for an alleged breach of that duty. In making this assessment, it is necessary to ascertain the character of the allegedly negligent governmental act or omission. As this Court has determined, basic judgmental or discretionary governmental functions are immune from legal action, whereas operational acts are not protected by sovereign immunity." Pollock v. Fla. Dep't of Highway Patrol, 882 So.2d 928, 933 (Fla. 2004) (citation omitted).
>
> A discretionary function, under Florida law, is one in which "the governmental act in question involved an exercise of executive or legislative power such that, for the court to intervene by way of tort law, it inappropriately would entangle itself in fundamental

---

[1] Based on these allegations in the Complaint, there are adequate allegations to show the Sheriff should have known that the deputy sheriffs were dangerous, thereby supporting a cause of action for negligent failure to supervise or retain.  Defendants are correct that the Complaint does not provide factual allegations to support a negligent hiring claim.  Plaintiffs are granted leave to amend the Complaint to provide allegations to support negligent hiring.

>questions of policy and planning." Henderson v. Bowden, 737 So.2d 532, 538 (Fla.1999) (citation and internal quotation marks omitted). "An 'operational' function, on the other hand, is one not necessary to or inherent in policy or planning, that merely reflects a secondary decision as to how those policies or plans will be implemented." Id. (citation and internal quotation marks omitted). Florida's discretionary function exception to its general waiver of sovereign immunity "is grounded in the doctrine of separation of powers," and "it would be an improper infringement of separation of powers for the judiciary, by way of tort law, to intervene in fundamental decisionmaking of the executive and legislative branches of government, including the agencies and municipal corporations they have created." Kaisner v. Kolb, 543 So.2d 732, 736-37 (Fla.1989).

Cook, at 1117-18.

Based on this discussion, the Court in Cook determined that the plaintiff's challenged actions, which concerned the sheriff's decisions regarding the training of its officers and the subject matter to include in the training, were discretionary governmental functions immune from legal actions. Id. at 1118. On the other hand, the Eleventh Circuit has found that when a plaintiff challenges the implementation of a training program as opposed to the content of the program, sovereign immunity does not apply to that operational act. See Mercado v. City of Orlando, 407 F.3d 1152, 1162 (11th Cir. 2005); Lewis v. City of St. Petersburg, 260 F.3d 1260, 1266 (11th Cir. 2001).

The Court finds that there are allegations in the Complaint that ultimately may be determined to be operational functions. At the same time, some of the allegations may fall into the category of discretionary functions. At this early stage of the proceedings, the Court cannot determine, as a matter of law, whether the practices challenged fall under discretionary or operational functions. Therefore, the Court will allow the claim to proceed and Defendants may renew this argument when the record is more fully developed on a motion for summary judgment.

Defendants also seek the dismissal of the Monell claim brought under count six.[2]  "The Supreme Court has placed strict limitations on municipal liability under § 1983."  Grech v. Clayton Cnty., 335 F.3d 1326, 1329 (11th Cir. 2003) (citing City of Canton v. Harris, 489 U.S. 378, 385 (1989) and Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978)).  A county's liability under Section 1983 "may not be based on the doctrine of respondeat superior."  Id.  A local government is "liable under Section 1983 only for acts for which the local government is actually responsible."  Marsh v. Butler Cnty., 268 F.3d 1014, 1027 (11th Cir. 2001).  "Indeed, a county is liable only when the county's 'official policy' causes a constitutional violation."  Grech, 335 F.3d at 1329.  Thus, Plaintiff must "'identify a municipal 'policy' or 'custom' that causes [its] injury.'"  Id. (quoting Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998)).

A § 1983 plaintiff "has two methods by which to establish a county's policy: identify either (1) an officially promulgated county policy or (2) an unofficial custom or practice of the county shown through the repeated acts of a final policymaker for the county."  Id.  "Because a county rarely will have an officially-adopted policy of permitting a particular constitutional violation, most plaintiffs . . . must show that the county has a custom or practice of permitting it and that the county's custom or practice is 'the moving force [behind] the constitutional violation.'"  Id. at 1330 (quoting City of Canton, 489 U.S. at 389).

To establish "§ 1983 liability against a municipality based on custom, a plaintiff must establish a widespread practice that, 'although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the

---

[2] Defendants also reassert their argument that the constitutional violations pursuant to the Fifth and Sixth Amendments should be dismissed.  Because this argument was addressed previously, it is not necessary to discuss it again.

force of law.'" Brown v. City of Fort Lauderdale, 923 F.2d 1474, 1481 (11th Cir. 1991) (quoting City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988)); see also Wayne v. Jarvis, 197 F.3d 1098, 1105 (11th Cir. 1999) ("To establish a policy or custom, it is generally necessary to show a persistent and widespread practice.").

Defendants contend that the Complaint fails to provide specific allegations as to what should have been known by the Sheriff about any of the named sheriff deputy Defendants, any specific customs or policies of the Sheriff which led to the alleged actions of Defendants or the Sheriff's notice of the policy or custom at issue. The Court disagrees. With respect to the issue of the Sheriff's notice, the Court notes that the Sheriff is being sued in his official capacity only. Even if the Sheriff did not personally participate in the alleged unconstitutional act, if there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation, supervisory liability under section 1983 occurs. Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003). "[T]he causal connection may be established when a supervisor's custom or policy results in deliberate indifference to constitutional rights or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Id. (internal quotation marks omitted).

After a careful review of the Complaint, the Court finds that a Monell claim is properly alleged. The Complaint alleges specific customs and policies of the Sheriff that allegedly led to the actions of the deputy sheriff Defendants. (Compl. ¶¶ 100-01, 103-06.) The Complaint also alleges the Sheriff was aware of several named individuals injured at the hands of other deputy sheriffs. (Compl. ¶ 110; see also Compl. ¶ 98, 103.) At the pleading stage, these allegations are

sufficient to allege that the Sheriff had notice.[3]  See Spadaro v. City of Miramar, 855 F. Supp. 2d 1317, 1343 (S.D. Fla. 2012).

Finally, with respect to Defendants' request that the claims of each Plaintiff be severed, the Court will deny the request without prejudice.  Should the claims survive summary judgment, Defendants may renew this request.

IV.  Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Defendants' Motion to Dismiss, or in the Alternative, Motion to Sever Plaintiffs (DE 4) is **GRANTED IN PART AND DENIED IN PART.**  Plaintiff shall filed an amended complaint **within 14 days of the date of entry of this Order**.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 11th day of April, 2014.

_____
KENNETH A. MARRA
United States District Judge

---

[3] Defendants are correct, however, that to proceed in this action, Plaintiffs will need to provide more than names of injured individuals.  See, e.g., Wright v. Sheppard, 919 F.2d 665 (11th Cir.1990) (the sheriff's department was not liable for a deputy act's when there was no evidence of widespread abuse to put the sheriff on notice for need for improved training); Popham v. City of Talladega, 908 F.2d 1561 (11th Cir.1990) (affirming summary judgment finding no liability for failure to train when no pattern of incidents put the city on notice of a need to train); Brooks v. Scheib, 813 F.2d 1191 (11th Cir.1987) (no notice of past police misconduct because the plaintiff did not demonstrate that the ten citizen complaints about the police had any merit).  In addition, the Court notes that Defendants have not identified caselaw requiring the Complaint to allege that the Sheriff had specific knowledge about these particular deputy sheriffs.  In Spadaro, the court found that the complaint adequately alleged notice by stating there was a pattern of misconduct against several individuals and the city had knowledge of those injuries.  Id. at 1343.